THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In the Matter of the Complaint of Lance Staughton, owner of S/V BAT OUT OF HELL, a 1997 Carroll Marine, Ltd. Model Mumm 30, U.S.C.G. No. 1070686 (USA55), for Exoneration from or Limitation of Liability. | CASE NO. C20-0725-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff Lance Staughton's motion for summary judgment. (Dkt. No. 37.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.  BACKGROUND

According to Mr. Staughton, on March 25, 2017, two sailboats, BAT OUT OF HELL ("BOOH"), owned by Mr. Staughton, and BALANCE, owned by Lee Skene, collided during a sailboat race. (Dkt. No. 38 at 4.) Claimant Matthew Walker, a BOOH crew member, was injured. (*Id.* at 38.) Following the race, and in accordance with the sailing rules agreed to by all race participants, Mr. Staughton filed a written protest. (*Id.* at 7-8.) The Protest Committee held a hearing shortly after the end of the race. (*Id.* at 8.) Mr. Staughton, Mr. Skene, and one additional eyewitness testified. (*Id.*) Both parties were given the opportunity to present evidence and to ask

questions of the other party. (Dkt. No. 39-1 at 36–37.) Mr. Staughton also presented a hand drawn diagram of the incident. (Dkt. No. 42-1 at 58.) It does not appear that Mr. Skene contested or supplemented this evidence.

The Protest Committee issued its written decision on March 27, concluding BALANCE caused the accident and BOOH was not at fault. (Dkt. No. 38-6 at 2.) Mr. Skene appealed the decision to the Pacific International Yachting Association Appeal Committee, who affirmed. (Dkt. No. 38-14.)

In March 2020, Mr. Walker filed a personal injury lawsuit in King County Superior Court against Mr. Skene and Mr. Staughton. (Dkt. No. 20-16.) Shortly thereafter, Mr. Staughton filed an action in this Court seeking limitation of, or exoneration from, liability under the Limitation of Shipowners' Liability Act, 46 U.S.C. § 30505.[1] (Dkt. No. 1.) Mr. Walker filed an answer, asking this Court to find Mr. Staughton liable for his injuries. (Dkt. No. 17.) Mr. Staughton then filed filed a third-party claim against Mr. Skene, asking this Court to find Mr. Skene liable for any of Mr. Walker's claims for damages. (Dkt. No. 21.) Mr. Skene answered, claiming various affirmative defenses and asking this Court to find Mr. Staughton fully liable for Mr. Walker's injuries. (Dkt. No. 26.)

Mr. Staughton moves for summary judgment on all of his claims and Mr. Skene's counterclaims, asking this Court to find that there are no genuine issues of fact regarding the import of the Protest Committee's decision and, accordingly, a lack of fault on Mr. Staughton's part. (Dkt. No. 37.) Mr Walker joins in the arguments set forth by Mr. Staughton. (Dkt. No. 43.) Mr. Skene opposes. (Dkt. No. 42.)

---

[1] The statute allows the owner of a vessel to limit liability to the value of the vessel. 46 U.S.C. § 30505(a). However, previous courts have held that if there was no fault or negligence on behalf of the shipowner, there is no liability to be limited and the owner is entitled to exoneration. *See, e.g., In re Complaint of Messina*, 574 F.3d 119, 126 (2d Cir. 2009); *Am. Dredging Co. v. Lambert*, 81 F.3d 127, 129 (11th Cir. 1996).

## II.   DISCUSSION

### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.   Racing Rules of Sailing

Mr. Staughton argues that under the Racing Rules of Sailing ("RRS"), the parties to a protest are bound by the decision of the Protest Committee and cannot seek a different determination in a court of law.[2] (Dkt. No. 37 at 19.) Mr. Skene counters that the purpose and intent of the Protest Committee is not to determine issues of legal liability but to decide whether penalties and/or disqualifications should be issued. (Dkt. No. 42 at 9.) It is undisputed, though, that both parties agreed to accept the RRS by signing up to participate in the race. (*See generally*

---

[2] The Court may judicially notice any facts that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(a)–(b). Both Mr. Staughton and Mr. Skene include the 2017–2020 Racing Rules of Sailing (RRS) as exhibits to their briefing and neither party contests the authenticity of the rules. (*See* Dkt. No. 38-5, Dkt. No. 42-1 at 74–262.) Thus, the Court takes judicial notice of the RRS.

Dkt. Nos. 37, 43, 44.)

Although there is relatively little case law on the subject, courts who have faced this issue have applied the principal that participants in a sailing race are "contractually bound to race by the rules of the road contained in the [racing rules][3], and to resolve issues related to fault for any collisions according to those rules." *Juno SRL v. S/V ENDEAVOUR*, 58 F.3d 1, 6 (1st Cir. 1995) (reversing the district court for going beyond the findings of the protest jury in the assignment of fault and concluding the racing rules that both parties had previously agreed to were binding).

Mr. Skene argues that, under the current RRS, the Protest Committee is not intended to find liability. (Dkt. No. 42 at 10.) First, he cites to U.S. prescription to RRS 67(a),[4] which states, "[a] boat that retires from a race or accepts a penalty does not, by that action alone, admit liability for damages." (Dkt. No. 38-5 at 33.) He argues that this supports the conclusion that the Protest Committee is not intended to find liability. (Dkt. No. 42 at 10.) But as Mr. Staughton points out, Mr. Skene neither withdrew from the race nor accepted a penalty, making this section irrelevant. (Dkt. No. 44 at 11-12.)

The remaining sections in U.S. prescription to RRS 67 further support the Protest Committee's ability to determine liability. These sections state:

> (b) A protest committee shall find facts and make decisions only in compliance with the rules. No protest committee or US Sailing appeal authority shall adjudicate *any claim for damages*. Such a claim is subject to the jurisdiction of the courts.
> (c) A basic purpose of the rules is to prevent contact between boats. By participating in an event governed by the rules, a boat agrees that *responsibility for damages arising from any breach of the rules shall be based on fault as determined by an application of the rules*, and that she shall not be governed by the legal doctrine of 'assumption of risk' for monetary damages resulting from contact with other boats.

U.S. Prescription to RRS 67. (Dkt. No. 38-5 at 33) (emphasis added).

Section (b) makes no mention of liability, but states that the Protest Committee will leave

---

[3] Prior to 1997, the Racing Rules of Sailing were titled the "International Yacht Racing Rules."

[4] RRS Rule 67 states, "[t]he question of damages arising from a breach of any rule shall be governed by the prescriptions, if any, of the national authority."

adjudication of claims for *damages* to the jurisdiction of the courts. In contrast, section (c) discusses liability, stating "responsibility for damages" is "based on fault as determined by an application of the rules." Additionally, RRS 3.3(b) states that "[a]cceptance of the *rules* includes agreement . . . not to resort to any court of law or tribunal not provided for in the rules." (Dkt. No. 38-5 at 11) (emphasis in original). These rules, when read together, make clear that although it is the jurisdiction of the courts to adjudicate claims for damages, findings of liability should be left to the process laid out by the rules. As a result, by agreeing to the RRS, the parties have agreed to a private dispute resolution process with clear procedures for settling any disputes that arise while racing.

Mr. Skene cites to *Halloway v. Bashara*, 176 F.R.D. 207 (E.D. Va. 1997), where the district court held there was a genuine issue of material fact in interpreting the rules based on an unauthenticated letter from the Chair of the U.S. Sailing Association Legal Committee, which stated, "U.S. Sailing judges were not to determine liability." (Dkt. No. 42 at 10-11) (citing *Halloway*, 176 F.R.D. at 212). But in *Halloway*, the district court acknowledged the fact that the letter was unauthenticated. It nonetheless considered the letter's contents because there were no objections. No such letter has been filed in this Court, and we decline to consider the unauthenticated letter here. Mr. Skene also presents deposition testimony from one of the Protest Committee members stating the purpose of the committee is not to determine fault or liability. By presenting this extrinsic evidence, Mr. Skene argues that the intent of the rules were not to determine issues of liability.

However, parties who enter a sailing race with published instructions setting out the conditions of participation have essentially entered into a private contract with all the other participants to abide by the rules, which include a process for dispute resolution. *See Juno*, 58 F.3d at 5. When a contract is clear and unambiguous, the Court will enforce the plain language of the contract and will not look to extrinsic evidence to interpret the terms. *U.S. v. Nunez*, 223 F.3d 956, 958 (2000). The terms of the rules are clear here, and thus the Court need not look to

extrinsic evidence to interpret the rules.

### C. Due Process

Mr. Skene also argues that the findings and conclusions of the Protest Committee rely on incomplete and unreliable evidence; thus, adopting the Committee's findings would violate his due process rights. (Dkt. No. 42 at 9.) Mr. Staughton argues that because the Protest Committee is a private dispute mechanism, its decision should be binding on the parties. (Dkt. No. 37 at 15.)

By agreeing to arbitration, each party "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Neither party here disputes the fact that the RRS applied to this race or that the RRS provide a private dispute process.

In *Juno*, the First Circuit held the racing rules met the requirements of due process because there was written notice of the allegations, the parties were allowed to appear and present evidence and witness testimony, the parties were allowed to cross-examine opposing witnesses and argue orally, and a written decision making findings of fact and determining fault was issued to all interested parties. 58 F.3d at 6–7. The court also emphasized that the evidence was heard soon after the events at issue took place and presented to a panel of experts. *Id.* at 7.

Mr. Skene attempts to differentiate this case from *Juno* by arguing that there was no dispute regarding the reliability of fact finding performed by the Protest Committee in that case. (Dkt. No. 42 at 11.) To support his argument, Mr. Skene notes the Protest Committee in this case failed to consider key facts and one of the committee members was not an "expert." (*Id.* at 12.) However, Mr. Skene had the opportunity to provide testimony and present evidence to the Protest Committee. He, nevertheless, did not present his own drawing of the events at issue or ask for more time to submit additional evidence to the Committee. He also did not object to the makeup of the Committee at the time of his hearing or during his appeal.

Ultimately, Mr. Skene appears to disagree with the Protest Committee's determination.

But by agreeing to the RRS through his participation in the race, Mr. Skene agreed to abide by the process provided by the rules. Through that process, he was given written notice of the hearing and was allowed to appear and present evidence. He was given the opportunity to cross examine the witness and present his case. A written decision was also issued detailing the committee's findings of fact and determination of liability. Finally, he had the opportunity to appeal the decision. In sum, Mr. Skene was provided the opportunity to have the issue of fault decided based on the procedures he agreed to when he signed up for the race. It would be inappropriate for this Court to reanalyze the facts at issue and insert its judgment on the matter.

Accordingly, the Court FINDS there are no genuine issues of material fact that would preclude a determination that Mr. Skene is bound by the Protest Committee's finding of fault. Moreover, because the Protest Committee found Mr. Staughton not at fault for the collision, Mr. Staughton is exonerated from liability related to the collision at issue.

### III.   CONCLUSION

For the foregoing reasons, Mr. Staughton's motion for summary judgment (Dkt. No. 37) is GRANTED. However, this Court does not have jurisdiction beyond 46 U.S.C. § 30505, which grants this Court the power to limit a shipowner's liability and, indirectly, exonerate that person from liability. Any remaining claims or counterclaims by Mr. Staughton, Mr. Skene, or Mr. Walker requesting a *determination of liability* or *damages* are DISMISSED without prejudice for lack of subject matter jurisdiction.

DATED this 13th day of September 2022.

                                                                    _____
                                                                    John C. Coughenour
                                                                    UNITED STATES DISTRICT JUDGE